WILLIAM BASSETT *vs.* GEORGE E. ROGERS & another.

Suffolk.    March 19, 1894. — June 23, 1894.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Sale of Land — Principal and Agent — Liability of Broker to account for entire Proceeds of Sale — Evidence.*

By separate written agreements, both executed on the same day, A. and B. each bound himself to convey his land to the order of C. for a consideration named, and to pay him a brokerage commission for effecting a sale of it. Subsequently A., by the direction of C., conveyed his land to B., and gave to C. an order to receive the consideration. C. collected from B. a larger sum than the consideration named, receipted for it, and, after paying over to A. the price named by him, retained for himself the excess which he had received from B. A. afterward paid C. his brokerage commission. *Held*, in an action by A. against C. to recover the excess so retained by him, that, if C. was acting as the agent or broker of A., good faith required that he should account to him for all that he received from the sale of his property, and that there was evidence proper to be considered on which it would have been competent for the jury to find that the transaction was in substance one where A. and B. were engaged as principals and C. was acting as their agent or broker, and whether C. was so acting was a question of fact which should have been submitted to the jury.

Evidence of the circumstances under which a written agreement for a sale of land was entered into, and the acts and declarations of the parties under it, are admissible for the purpose of assisting in interpreting and applying the agreement, but not for the purpose of contradicting or varying its terms.

The plaintiff agreed in writing to convey land to the order of the defendant for a price named, and to pay him a brokerage commission for effecting a sale of it. The defendant sold the land for a sum larger than the price named by the plaintiff, and retained the difference himself, and charged the plaintiff his commission. *Held*, in an action to recover the difference, that the plaintiff should have been permitted to show that his property had been and was in the hands of the defendant for sale as a broker on commission before and at the time of signing the agreement, as well as what representations were made by the defendant as to his object in taking the agreement, and its purposes so far as he was concerned, as, if they were of the nature which the plaintiff offered to show, they had a tendency to show that the agreement was procured by fraud and misrepresentation on the part of the defendant.

TORT, to recover the value of twenty-five shares of the stock of the Union Pacific Railway Company, and the value of a promissory note of one C. C. Homer for $269.90, alleged to have been wrongfully withheld from the plaintiff, and converted by the defendants to their own use.    Writ dated June 15, 1891.

At the trial in the Superior Court, before *Braley*, J., there

was evidence tending to show that on August 28, 1888, the plaintiff agreed in writing to sell and convey " to the order of George E. Rogers and P. Briggs Wadsworth " a parcel of land with the buildings thereon situated on Dalton Street in Boston, receiving in payment therefor the real estate and personal property named and described in a memorandum annexed to the agreement, and " to pay to George E. Rogers and P. Briggs Wadsworth a brokerage commission of three hundred and fifty dollars."

The several parcels of real estate and articles of personal property named in the memorandum annexed to the agreement, with their respective values, were : 18,400 feet of land, Summer Street, Chelsea, $2,300 ; 14,080 feet of land, Melrose, $2,112 ; 5,000 feet of land, Orange Street, Chelsea, $2,000 ; lease on Chestnut Street, Boston, guaranteed to net $925 ; 2 shares Leavenworth and Topeka Railroad stock $200 ; amounting in all to $7,537.

On the same day one Blanchard also agreed in writing to sell and convey " to the order of ". the defendants certain parcels of real estate and certain articles of personal property, agreeing to receive in payment therefor the house of William Bassett, the plaintiff, on Dalton Street in Boston, and to pay to the defendants " the usual brokerage commission of two and one half per cent on value of land as per above schedule."

The schedule referred to was as follows : 18,400 feet land, Summer Street, Chelsea, $1,840 ; 5,000 feet land, Orange Street, Chelsea, $2,000 ; 25 shares Union Pacific $61\frac{50}{100}$, $1,537.50 ; 14,080 shares [*sic*], Melrose, $1,408 ; lease, Chestnut Street, Boston (guaranteed), $925 ; note due September 29 (guaranteed), $269.90 ; amounting in all to $7,980.40.

Subsequently, on September 12, 1888, the plaintiff, by the direction of the defendants, conveyed his land on Dalton Street, Boston, to the wife of Blanchard, and received from Blanchard through the defendants a conveyance of his land in Chelsea and Melrose, an assignment of the lease of the property on Chestnut Street, Boston, and two shares of Leavenworth and Topeka Railroad stock ; but he did not receive the two shares of Union Pacific Railway stock, nor the promissory note of Homer, which were a part of the consideration to be paid by Blanchard for the purchase of the plaintiff's property, although they were transferred by Blanchard to the defendants. It was admitted by the defend-

ants, at the trial, that the note was paid at maturity, and that the value of the Union Pacific Railway stock was $61.25 per share.  On October 27, 1888, the defendants presented to the plaintiff a bill for their commission of $350 for selling his real estate, and it was paid by him.  On September 10, 1888, the defendants procured from the plaintiff an order on Blanchard to deliver the personal property to one of them, upon which, on receiving it, the defendants wrote : " Received of Alfred Blanchard, in compliance of this order, 25 shares of stock of Union Pacific Railroad, at $61.50 per share, $1,537.50 ; lease of estate, 43 Chestnut Street, Boston, $925.00 ; note of C. C. Homer, Malden, Mass., due Sept. 29 – Oct. 2, 1888, $266.90.  Same being in full to cover the personal property described in an agreement of Alfred Blanchard to purchase of Wm. Bassett estate of Dalton Street, Boston.  Geo. E. Rogers, and for P. Briggs Wadsworth."

In support of his contention that in this transaction the defendants were acting as brokers for him on commission, the plaintiff offered evidence of conversations between him and the defendants at a time prior to the making of his agreement, when the defendants had his real estate for sale in the ordinary way as brokers, as to the purpose for which they wanted such a paper.  He also offered to show that, when the defendants obtained the agreement from him, his property was in their hands for sale as brokers upon commission ; that they told him that they always took a paper agreeing that the title should go to their order, so as to protect them in their business ; that they frequently had trouble when only a verbal order to sell was left with them, and that the property was to be left with them as agents to sell; and that thereupon he signed the agreement.  He further offered the conversation of the parties at the time of the execution of the agreement as to the purpose or use for which the defendants desired it.  The judge excluded the evidence; and the plaintiff excepted.

The plaintiff further offered conversations between the parties subsequent to the execution of the agreement, but the judge excluded them, and ruled that only a subsequent contract between the parties could be shown ; and the plaintiff excepted.

At the close of the plaintiff's case, the judge, at the request of the defendants, ruled that the action could not be maintained,

and directed the jury to return a verdict for the defendants; and the plaintiff alleged exceptions.

*W. H. Drury*, for the plaintiff.

*R. M. Morse*, for the defendants.

MORTON, J. We think that the case should have been submitted to the jury, and that the evidence which was offered by the plaintiff should have been admitted. The plaintiff contended that in making the sale the defendants were acting as his agents and brokers. There was evidence which the jury might properly have considered as bearing on that question, and it was a question of fact for the jury whether they were so acting. The plaintiff agreed to pay, and did pay, the defendants a commission for effecting the sale, which had some tendency to show that they were acting as his brokers. The agreement which he signed, and on which the defendants rely, bound him to convey, not to the defendants, but to their order, which tended to show that they were acting as intermediaries between the plaintiff and a purchaser. The order which the defendants procured from the plaintiff on Blanchard for the delivery of the personal property, and the receipt which they gave, also had some tendency to show that they were acting as agents for the plaintiff. It would have been competent for the jury to find that the transaction was in substance one where the plaintiff and Blanchard were engaged as principals, and the defendants were acting as their agents or brokers. There was nothing in the agreement inconsistent with this view. As already observed, it was not an agreement to sell to the defendants, but to their order. The defendants did not agree by it to purchase. It was consistent with the terms of the agreement, that it was taken by the defendants for their protection in negotiating a sale for the plaintiff. If they had made a sale for the consideration, and on the terms named in it, the plaintiff would have been bound by the sale. It did not purport to give them the right, if they succeeded in getting more than the consideration named, to pocket the difference between that and what was actually obtained. On the contrary, the only compensation referred to in it was a " brokerage commission of three hundred and fifty dollars " which the plaintiff was to pay them. If the defendants were acting as the agents or brokers of the plaintiff, good faith required that they should account to him for

all that they received from the sale of his property; and we think that there was nothing in the nature of the agreement to prevent the court from submitting to the jury the question whether that relation existed between them, and that it ought to have done so.

We also think that the evidence which the plaintiff offered should have been admitted. For the purpose of assisting in interpreting and applying the agreement, it was competent for the plaintiff to show the circumstances under which the agreement was entered into, and the acts and declarations of the parties under it. *Knight* v. *New England Worsted Co.* 2 Cush. 271. *Adams* v. *Morgan,* 150 Mass. 143. *Whittier Machine Co.* v. *Graffam,* 156 Mass. 415.

Such evidence is not admitted for the purpose of varying or contradicting the written agreement, but to aid in getting at its true construction. The plaintiff also should have been permitted to show that the property had been and was in the hands of the defendants for sale, as brokers on commission, before and at the time of the agreement. Evidence of the representation of the defendants as to their object in taking the agreement, and its purposes so far as they were concerned, should likewise have been admitted. If of the nature which the plaintiff offered to show, they had a tendency to show that the agreement was procured by fraud and misrepresentation on their part.

*Exceptions sustained.*